The United States is the largest economy in the world. It  The consultant also says, this is at appendix 1118, with reference to the criteria for a 70% disability rating as shown in an extract from the VASRD. Yes. Now, the copy I have in the appendix doesn't have any attachment. No, you're correct, Your Honor. But we know that the VASRD does talk about 70% disability ratings. That's what this case is all about. So I think it's a bit of a stretch to say that both the medical consultant and the board were not at least aware of the VASRD and the different ratings. Your Honor, with respect, I disagree. The reference here to the 70% disability rating in the extract from the VASRD, the discussion is only on the relative timing of those determinations and the fact that the VA may make determinations later in time. Are you saying that they have to list, I've looked at those ratings, and they have to list each one of those symptoms and address whether or not they exist in the record? Well, a fact finder, I would say, actually should do that. The separate question is whether that's error, if there's nothing listed here. That's not our argument. Our argument is that they list and discuss and apply the wrong rating scale. And getting back to Judge Lynn's question, looking at this section, there is a discussion of a 70% disability rating, but if you flip the page onto A1119, it says the consultant places probative value in the rating determination by the DVA. There was no rating determination by the DVA. There's some apparent confusion that the consultant believed there was a 70% rating before him in the record when there was not. And the only discussion of the VASRD and any 70% rating is in the context of dismissing the probative value of a rating that wasn't before the consultant. There was some confusion. And then he goes on to match up the GAF score, which he designates moderate, with his description of the 30% rating under the wrong rating scale, the S&I social industrial adaptability scale. If you look at the discussion on page A1118, he goes through that scale, and if you look at the rescinded regulations, 30% is described as definite. And you can see he's italicized definite. That's a quotation from that source. He's characterized that independently as moderate, and that's indicative of him taking that rating scale and applying it, because he matches moderate, his description of the 30%, with the GAF score, which he also describes as moderate. That's his analysis. And we would submit when the agency is discussing and applying the wrong law, that's legal error. If we disagree with you and conclude that the board was aware of the standards, then where does that leave you? Well, we would say notwithstanding whether or not they're aware of them, that no reasonable interpretation of the standards, as applied to the undisputed symptoms revealed here, show there's a mismatch, and that's legal error. That indicates that the board's decision was contrary to law. I mean, we have many, many cases that make clear that it's not necessary for a board to sort of articulate with great particularity every basis for a conclusion, and there is a presumption of regularity that the board considered all the evidence before. So if we conclude that the standards were before the board and that the full record was before the board, then gives you argument that, well, they just haven't explained enough about how they got from A to B? No, Your Honor, that's not our argument. Our argument is, notwithstanding any presumption, we know what law they discussed and applied, and that was the wrong law. Well, my assumption is that we disagree with you on that point. All right. Well, my second answer, Your Honor, is that if you take the actual undisputed findings of fact as to Ms. Taylor's disability, which are extraordinarily severe, weakly suicidal ideations, that can only be matched with a 70% rating. There's no room for those symptoms at a 30% rating, and therefore the determination whether or not it applied the right legal standard, we would strenuously say it didn't, is contrary to law. I took the time to match the record a little bit with the listed symptoms, and just for a second, I'll say that, you know, I think you're right, that my naked eye seemed to say that more of her symptoms were in the higher category than the lower one. But even if I made that judgment here as an appellate judge looking at words on a page, these are doctors. This is medical evidence. How can my judgment that sleeplessness or acute depression or whatever the many symptoms are, difficulties in relationships, and there are 30 or 40 different things there, how could I substitute my judgment for that of these doctors? Well, we're certainly not asking you to reassess your symptomatology. We're asking you to accept the symptoms as found by the Air Force's own doctors. Those doctors found weakly suicidal ideation. There's no additional factual analysis or medical analysis needs to be done there. All we need to do is see what category that falls in. That one, of course, is dismissed a little because it is primarily self-reported, I think is the way they say it. But the board concluded that that was a fact, and we can't revisit that, certainly at the appellate level. That was the finding by the Formal Physical Evaluation Board. But I'm still left with the point that the doctors looked at all that, the physicians looked at all that, and they said 30%. How do I second-guess? I may not, with my layman's understanding, really know what suicidal tendencies are. Well, Your Honor, with respect, the doctors did not apply the rating schedule. That was done by the Formal Physical Evaluation Board, which does have one medical member, but they're not acting as a medical member at that point. The finding of suicidal ideation was not just self-reported. That's in the MED, found by the psychologist. It's written into the notes, and I have the portion of the record if you'd like it, Your Honor. So that was a finding that was found, suicidal ideation. Once that's found... And I understand. Suicidal ideation is only in the 70% category. It's not back in the 30%. I checked that box when I was doing this little exercise. But a doctor looked at all this and said, well, conceivably, that's not as significant as everything that's in the 30% box. Well, Chief Judiciary, that's where I disagree. Well, how do I... It's factual. It's so factual, I'm having trouble with it. It wasn't a medical doctor that made that assessment. Again, it was the Formal Physical Evaluation Board and found those specific findings. The problem with what the Formal Physical Evaluation Board did was they attributed some of her symptoms, including her most severe symptoms, to borderline personality disorder. So that decision was overturned by the Air Force Board for Correction of Military Records. So they fixed that one problem. Unfortunately, in doing so, they failed to then reassess her symptoms under the BASRD. Instead, the only discussion in the application of a rating scale is the wrong scale. But they went back and they adopted the rating that had been established by the Examination Board at 30%. Thank you, Judge Ray. The problem with that was that was an error, that decision, because, again, that was based on an incorrect diagnosis of borderline personality disorder. Ms. Taylor's most severe symptoms were all attributed to borderline personality disorder, which significantly discounted her rating. And so that initial decision by the Formal Physical Evaluation Board was wrong. The 30% is a significant discount. The symptoms, we don't dispute. Those are factual findings. The severe symptoms, social isolation, weekly suicidal ideation, depressed mood. It's a series of symptoms, and those point to only one rating, 70%. Those symptoms don't appear in 30%. But not all the symptoms were found in the 70% range. No, you're correct, Judge Ray. There are some that are less severe. She had judgment. She was well-groomed. She took care of herself. Well, Your Honor, we have to distinguish between how she appeared on that day versus the overall judgment of the record. And, yes, she may have appeared well-groomed, and, therefore, it doesn't fit that one box in 70%. But, again, weekly suicidal ideation, social isolation, these are especially severe symptoms. This is not a well person. He also found that her judgment was not impaired. Well, on that one day that she appeared, there was... But that's the only day. I mean, that's the examination. Yes, again, we have to take the evidence... Well, what do you say? He should follow her around for a month before he makes... No, Your Honor, I think the evidence has to be taken in its totality. And those were the determinations by the Formal Assessment Evaluation Board were that she had these especially severe symptoms, she couldn't obtain work, and she couldn't complete her education. I agree with you, Judge Rainier. There were some parts that don't fit, but you don't need to meet every single criteria. Isn't your argument that the 30% finding by the examination board, that's a factual argument? No, Your Honor. That determination was overturned, remember, by the Air Force Board for Correctional Military Records. That was in error because they had attributed some of her symptoms to the wrong diagnosis. We are not contesting the factual findings as to her symptoms. What you do with those symptoms, what diseases you attribute to them, and how you rate them, that was overturned. The medical consultant for the Air Force Board is Dr. Carson. Yes. A medical doctor. How do I second-guess his judgment? He said 30%. We're not asking you to second-guess any of his medical judgment because he didn't make a medical judgment. The problem was his legal analysis. As a medical consultant, he applied the wrong law. Okay. Thank you. Why don't we hear from Mr. Ross. See how that... Mr. Ross, and you heard me say I've made a little chart. If I have more checks that say the record fits a 70% rating than a 30% rating, should I send this back? No, Your Honor. You should not send it back. Well, the record seems to say, let's take suicidal ideation. That's only in the 70% category. It's clearly in the record. Your Honor, the standard of review of this court in this type of proceeding is that you review the decision below without deference. In other words, you apply the same standard as the trial court did in assessing the correctness of the board's action. That means that you cannot overturn the decision below unless you find that it's arbitrary, capricious, or unsupported by substantial evidence. There is substantial evidence in the record to support the decision below. The trial court made a finding of fact that the physical evaluation board did in fact use the Vassar D in assessing the rating disability of Ms. Taylor. And I'd like to begin... But how do we know whether that finding was supported by substantial evidence or was arbitrary given the fact that a lot of the evidence was originally considered in conjunction with the determination of borderline personality disorder? And that was overturned. The medical consultants spent a great deal of time, most of the discussion, in that consultant's report is all about why the conclusion that this was attributable to borderline personality disorder was not correct. And then there's sort of a gap. There's no clear articulation of the reassessment, if you will, of the fact-finding with regard to the suicidal ideation and other things under the Vassar D. So really the problem I'm having here is it seems to me the record clearly shows that the board had all of the evidence before it, presumptively considered all of that evidence. I'm convinced that the board was aware of the standards in the Vassar D. And we would normally presume that they were properly applied, but we have no articulation in either the medical consultant's report or the board's opinion of that determination that the Vassar D, as applied to these facts, concludes 30% is in order. Yes, Your Honor. There are two responses to that. The first is a factual response. When you look at the medical evidence or processing of Ms. Taylor in the record, there are three different evaluations that are germane to this proceeding. The first is that after 18 months of being on the temporary disabled list, she appeared before an informal evaluation board to reassess whether or not she was able to remain on active duty and, if not, the percentage rating disability. That board, as part of that proceeding, she appeared before a psychiatric board consisting of two psychiatrists, one of whom personally interviewed her. They prepared a psychiatric addendum. When you look at that psychiatric addendum, they found, as a matter of fact, that she was not suffering from suicidal ideations, she was not suffering from homicidal ideations, that her major depressive disorder was in partial remission and her PTSD was resolving. Therefore, they recommended that she be permanently... Excuse me, Your Honor. They recommended that she would be separated with a 10% disability. She appealed that determination to the physical evaluation board, the formal physical evaluation board. That board, taking that same evidence to include looking at the psychiatric addendum, wrote a report where they recommended that she be permanently retired and that she receive a 30% disability rating in accordance with the Vassar R.D. In the narrative, they explicitly stated that they were referring to the Vassar R.D. and that she should receive 30%. There is no mention that they took into account any of her borderline personality disorder diagnosis. They do recognize in their report that she was suffering from the Access 2 diagnosis, but they did not explicitly incorporate that diagnosis into their rating. Before reviewing the board, the board's consultant doesn't articulate why a 30% rating, except to say he's restoring the 30% rating, which was based on the erroneous BPD. Your Honor, factually, that is incorrect. And when you... Your way around that a little was to say, well, but there was this psychiatric board in the middle. They took into account the BPD, too. Your Honor... And that's erroneous. As a matter of fact, that is just incorrect. Okay, what did I miss there? Because the Physical Evaluation Board recommended that she receive a 30% disability rating in accordance with the Vassar R.D. They made no mention that they took into account the borderline personality disorder. Ms. Taylor then appealed that decision to the Secretary of the Air Force Personnel Council. That's the council... That council took into account her borderline personality disorder, and they referenced that the symptoms that she expressed in terms of suicidal ideations, inability to engage in gainful employment, inappropriate social behavior, those were also attributed to a borderline personality disorder. And the board opinion itself says that the formal PFB rating was based on an erroneous borderline personality disorder. Your Honor, that's... They say that's right in the opinion. The council's decision was based upon an erroneous consideration of the borderline personality disorder. The council's decision recommended that she be recommended, as did the informal... Maybe you can help just address this question. It strikes me that the only analysis that gets us to the 30% that I see in the record is the erroneous borderline personality disorder rating, which everybody agrees now is erroneous, and yet it is always taken into account again and reapplied. Your Honor, that's... You're uncomfortable with that. Show me where that's wrong. Because when you look at the Secretary of the Air Force Personnel Council's decision, they do take into account the borderline personality when they said that she should be separated with a 10% disability rating. When you look at the medical consultant's report, he said that decision was in error and that he recommends that the 30%, as recommended by the Physical Evaluation Board, be reinstated. So before the Board of Corrections to Military Records, what was before them was the decision of the Secretary of the Air Force to separate Ms. Taylor with a 10% disability rating based upon, as the consultant found, an erroneous consideration of the borderline personality disorder. Did the medical consultant take into account the evidence with regard to suicidal ideation? Your Honor, in terms of what did he specifically consider or not consider, in his report he says he considered the entire medical file in front of him. Okay, well let's give him credit for that and let's also agree that there's evidence of suicidal ideation. Your Honor? Yes, Your Honor. So then what do we make of the fact that the suicidal ideation is a factor in the 70% rating and nowhere else? And yet the ruling is that she's entitled to only 30%. Your Honor, it's important to read the entire record in context. And in the last section of the medical consultant's report, he acknowledges that there may be gaps in the record as to the medical evidence warranting a 70%. He afforded Ms. Taylor an opportunity to present additional medical evidence that had not previously been presented which would warrant a 70%. Well, so maybe she didn't have anything else. The question then is, well, maybe he did consider the evidence and didn't find it credible or in the big picture analysis concluded that that didn't justify a 70% award. But we have nothing to review because there is no statement that indicates anything other than the fact that I looked at everything. Your Honor, the focal point is not whether or not she should have received the 70%. The focal point is, is the 30% supported by substantial evidence? And the record shows that it is when you look at it entirely. We have different sets of medical... But I would submit that in every case where someone argues that a 70% rating might apply and there is a certain minimal threshold showing 30% would be supported by substantial evidence. So you wouldn't argue that, well, in every case, just grant 30% because substantial evidence supports it. If there's contrary evidence that supports 70% and you take it all into account, then the argument is that substantial evidence doesn't support 30%. Your Honor, that premise is based upon the fact that the evidence supporting the 70% is equal with the evidence supporting a 30%. When you look at what Ms. Taylor is asking, she is asking this court to take the same medical evidence that different sets, at least four different sets of medical professionals evaluated throughout the proceeding and the highest rating that any of those medical professors found was 30%. She is asking this court to disregard that, disregard that, cherry-pick one self-reported symptom of a weekly suicide ideation, which is important to note that at the psychiatric addendum, the report in September of 2008, they found that she was not suffering from suicidal ideations, but when she appealed to the physical evaluation board, that's when she reported the weekly suicidal ideation. So that the board was aware of that, but they also found that her major depressive disorder was in partial remission, that her PTSD was resolving, so looking at the totality, in their interview she was articulate, she was able to function. Yes, she did have slight problems, but those problems were resolving. She was benefiting from psychotherapy. She had seen a psychiatrist. She was on medication. All of those factors point to that she wasn't 70% disabled. So if you take Ms. Taylor's argument, at its core, at its bottom, what she is saying is, I self-reported suicidal ideations that in itself warrants a 70% disability. Now, if that were in fact all that it would take to get a 70%, we would submit that 70% would be the norm because most individuals report weekly suicidal ideations. We have doctors who evaluated the evidence, and they did consider her self-reported symptoms but they found that the medical evidence in the record outweighs her self-reported symptoms. Therefore, as a matter of fact, as a matter of law, in keeping with this board standard of review, Ms. Taylor is simply wrong. There is substantial evidence which supports the decision, and we urge this court to find likewise. This is a sideline. How do you have suicidal ideations other than in a self-reported form? Your Honor, she was seeing... You've got to tell them what you're thinking, don't you? Yes, Your Honor, but she reported that only to the medical evaluation. And took 50 pills. That was the situation which led to her... And her officer said, how could they have let you out of the hospital the day later? Your Honor, that was the situation which led to her initial medical board, which led to her being placed on the TDRL, and which led to where we are now with the permit. But in terms of what was in front of the board when they made the 30% diagnosis, she had been on the TDRL for 18 months. She had participated in 70 therapy sessions with a psychiatrist. She was on medication, so the symptoms which led to the suicidal attempt, the MEPB and all of that, that was resolving. And I might add that she wrote a 20-page rebuttal to the MEPB report where she specifically denied where she was trying to take her own life. That it was more of a personality conflict. So that, Your Honor, is the evidence. The substantial evidence supports the permanent... Thank you, Mr. Austin. Actually, you've been very helpful. And I appreciate your contribution today. Mr. Browning? Thank you, Chief Judge Rader. I'll try to focus on just a couple of points and not delay. Let me ask you a question before you begin. So when you're trying to establish a 70% rating, what is it that we're looking at? Are we looking at the totality of the symptoms that are reported? Is it really a checklist that if you check every box, or is it the degree of impairment? I'm glad you asked that question, actually, Your Honor. There's a recent case by this court, it's Heidener and Clybury, the Vasquez-Claudio v. Shinseki case, and it gives the court guidance as to how to approach this problem. In that decision, this court said the symptomatology should be the fact finder's primary focus when deciding entitlement to disability. Therefore, you look at the symptoms first. Are they severity? Are they duration? Are they the type of symptoms? So you're looking to establish the degree of impairment. Exactly. And that's a factual finding. It is, but it isn't, Your Honor. The finding is, what are the symptoms? Once a symptom has been found, the judgment is out of the picture. Weakly suicidal ideation is a severe illness, and that's associated with 70%. There's no additional weighing that needs to be done. There are additional factors, yes, and there needs to be showing that it impacts your work and school and social environment. Those findings are there as well. But it's not the case that the 70% rating that it's incorrect or correct based on whether, on the decision based on one of the symptoms or 12 of them. I mean, really what we're looking at, when we're looking at 70%, is whether the ultimate resolution of that examination of all the symptoms is the degree of impairment. I agree with you, Your Honor. I'm not arguing one symptom alone is enough. Truly, the record is much more than that, actually. If you look at the Formal Physical Evaluation Board's determination found unable to secure employment, unable to complete educational objectives, depressed mood, weakly suicidal ideation, irritability and indiscretions, chronic sleep impairment, social isolation. Those are severe symptoms, and they all hit in that box. Would you want us to look at those symptoms and to say, that's great impairment? Whereas a medical doctor looked at those symptoms, the totality of the entire record, and said, I don't find the 70%. Your Honor, I disagree that the determination as to a rating is a legal determination. That's not a medical determination. It's based on medically sound facts, but it's a legal determination. I know I'm out of time, but I'd just like to reflect on the government's argument that weakly suicidal ideation was just a self-report. That's in the record. I'm reading from the finding by the psychiatrist, the airport psychiatrist, associated with borderline personality disorder, recurrent suicidal ideation. And then the board independently found, based on this evidence and the testimony, weakly suicidal ideation. This is not just some random self-report. This is a factual determination that can't be revisited now, and is certainly amply supported by the medical record. And if you take that medical evidence and match it to the NASRD, 70% is the only answer. One final point. If you look at what the medical consultant did, he did not look at these severe symptoms. He looked at one thing, the GAF score, which he said was moderate, and he matched that to the social and industrial adaptability scale, which he also characterized as moderate. That was his entire legal analysis. It was legal or erroneous. Thank you, Your Honor. Thank you, Mr. Browning.